Will the lawyers please approach the bench and introduce yourselves on this case. Good morning, Your Honors. Yvonne O'Connor on behalf of FLE TIG Specialty Insurance. Good morning, Your Honors. Kim Carney on behalf of FLE TIG Specialty Insurance. Okay. Both of you have 15 minutes. Do you want to reserve some time? Okay. Let's proceed. Good morning. May it please the Court? At issue here is whether the Circuit Court erred in denying SNCC's motion for summary judgment, which was part of a cross-motion for summary judgment. Okay. Let me ask you a question. What is your cause of action here? Basically, it's a breach of contract action that arises out of the duties that TIG had towards IRMA. It's insured. And it's an unusual case, which I really believe is the case of first impression for the Court because of the fact that IRMA is a self-insured risk management pool. And TIG and SNCC were not really typical insurers. They were access carriers, but also access reimbursement policy carriers. So it's a situation where IRMA handled these cases from start to finish and would ask for reimbursement from either of those policy carriers. But doesn't the insured get to pick? Under what theory does safety get to pursue a breach of contract action? Under the assignment that was done. And so the assignment is the injury that IRMA has. Correct. IRMA and this member. And IRMA took the long-standing position that TIG, it's insurer under a claims-made policy in 1991, had no obligation to it for the 1998 injury. Did it not? If only if the 1998 injury was in fact a separate injury. There's a difference between separate claims and separate injuries. IRMA from the time that the 98 claim was filed notified TIG, even though IRMA was handling both claims itself, but notified TIG this 91 claim can't be settled because this injury is now, there's a new claim and the 98 claim could be related back to the 91 injury. That's in the record. That from 98 and continually through 2006 when this settled, that IRMA kept telling them the only way this can be resolved is by a trier of fact determining whether it is a new injury and they're separate and they should be paid by each of the access carriers. So rather than settling, National could have asked for a declaratory judgment on this very issue but chose not to. Safety National really never had a reason to do that because it could never be held liable for the 98. Why? Because that's what its suit was all about, wasn't it? Its suit was about claiming that these were the same injury and the only way to have that done is in a declaratory, is it not? No. The only way for that really to be done is a factual hearing by the arbitrator who would make that determination that TIG points out can't be overturned by the circuit court. You don't retry the case once the arbitrator makes that. So what was the option then? You gave that up, you settled, and you didn't have an arbitrator decide that. TIG gave that up and didn't. No, they're the one that wants it declared as the same injury. But there was never a point at which IRMA notified Safety National that they weren't pursuing these as potentially one injury. IRMA from the beginning said we're looking at this, a trier of fact the arbitrator has to figure it out. We believe, as it goes on and they keep telling TIG, we believe it is a continuation based on all of this evidence, but we can't tell you one way or the other. And TIG never filed that. So let's go back to the breach of contract theory. What exactly did they do? They breached their duty to IRMA by not defending the 98 claim because of its potential to be covered as a continuing injury from the 91 claim. From the second it was filed, they were on notice that it could be related back and they could be held responsible for everything from start to finish. Now, we completely agree that... So in summary judgment, what was your burden? Did you have to establish that they were the same injury or not? No. That would be... No, because TIG took steps to never let that determination be made. That's what we had to prove. That the steps that were taken by TIG were unreasonable and were vexatious and were designed to prevent that from happening. Doesn't the policy allow TIG to settle this case without any input from the insured? Only for the 91. If TIG had done anything to settle the 91 claim before the 98 claim was filed, yes, absolutely.  That they couldn't settle... Yes. They couldn't settle because of something in the 98 injury. What case are you in line with? I think it's combined with the issue of tendering this new claim under Cincinnati Companies versus West American and then also looking at home insurance. There's no specific case that involves this factual scenario. Who gets to tender? Irma. Who did Irma tender this claim to? It's not a precise tender because of the fact, as we've already discussed, that Irma handles these claims. Forget about whether it's precise or imprecise. Irma put TIG on notice. And looking at what is considered a tender, once Irma told TIG, hey, you can be on the hook for this. Did Irma tender this to safety or not? Yes. They put them on notice the same way. It's not really a tender. My question, if you admit that, my question is, if they tendered this to safety, why couldn't safety, once they only have responsibility for the later period in time, what's the stop? This is a coverage issue, okay? They could say this is not within our policy period because this goes back to the 91 injury. What's to stop safety from walking into the chancery division and filing a DEC action saying, Chancellor, tell us we have no liability here because this is a 91 injury and not a 98 injury, and then this whole thing would have been solved? Procedurally, they could have, but case law suggests that that wouldn't happen that way because there's a recent case that just came down that talks about the responsibilities of the chancery court versus the responsibilities of the Illinois Workers' Compensation Commission that goes back to skilling, which is an older case that talks about the Workers' Compensation Commission is uniquely qualified to make factual determinations, and the coverage issue here as between TIG and SNCC specifically relates to the factual issue of, does that 98 claim represent a new injury or does it relate back, such that the chancery court, while yes, it's uniquely qualified to make coverage decisions, it can't when that factual determination has to be made by the Workers' Compensation Commission claims that are already pending and consolidated. So let me ask you this question. If we were to reverse the judge, then the issue as to whether this is an aggravation or not an aggravation would have to be decided by the circuit court, is that what you're telling me? Basically because of what TIG did. I mean, in a perfect scenario, it would have been decided by the arbitrator or it would have been globally settled as TIG told SNCC and IRMA they wanted to do and globally settle and share in this. I mean, because of what TIG did, it has to be looked at by the circuit court. But what you're asking us to do is to decide the case as, or have the circuit court decide this case as if they were the industrial commission. Yes and no. I mean, that's the only way it could be resolved. We believe the circuit court doesn't necessarily have to have an evidentiary hearing on that basis and make a precise determination of every single dollar here has to be paid back to SNCC, but certainly can look at is what TIG did wrong and assess penalties under section 155 without going into the specific delineation of what medical bills and what attorney's fees paid in the underlying have to be repaid. The SIR issue is a very straight line issue, we believe, and the issue of penalties can be based on that instead of going back to specific dollar amounts for every bill that was paid. Well, how else could it be decided? We believe that looking at the SIRs, you can do that, that did TIG manipulate this? That's something that the circuit court can look at. They can look at all of the evidence and all of the letters and all of the claims, notes that we have from TIG saying, we're going to manipulate this case. We're going to force SNCC's hand. We're going to settle out from under them, even though we know in TIG's counsel's own letter it is overwhelmingly likely we're going to be on the hook for 100% of this at the time of hearing. That counsel said... I'm not sure I really understand your initial premise that this individual injured himself in 1991. Correct. And that was a claims made policy. Yes. And your policy in 1998 was a claims made policy. Yes. And he re-injured himself in 1998. That's what's at issue. Well, I'm not sure... What do you mean that's what's at issue? He filed a new claim, but in the workers' compensation arena... I thought he actually gave facts about what occurred at work. True. Yes, he alleges a new injury, absolutely. Well, then what are you doing with this? You don't have anything to suggest anything other than this was a claims made situation in 1998. How can you possibly go back seven years and say that this is a question of fact when he's already... The only testimony is his. He is the insured... Correct. Or rather, the beneficiary. Yes. Correct. So how can you change that? You haven't suggested anything to raise a question of material fact on that issue. It's absolute law at the commission that even if there's a new claim or two new claims or three new claims, if the trier of fact determines that those are aggravations or exacerbations of the initial injury, and here it's the absolute same part of the body, if at the time of hearing it's determined they're exacerbations or aggravations, it completely relates back to that old injury... For purposes of what? Liability. Absolute liability. And that's why TIG's own counsel said this is an all-or-nothing case. I don't like our chances at nothing. They knew that they were going to be on the hook for everything from 91 to 2006. All right, so then they settled. How are we going to assume that this settlement didn't represent everything? Because they even valued, before the 98 claim ever came into existence, TIG has notes where they were evaluating their liability on the claim at over a million dollars. And somehow that reduces by 90 percent to the point where they can settle 10 years later, because this was done in 1996, for $125,000, while SNCC then is forced to pay out over a million dollars. Nobody forced SNCC to pay out anything. Why didn't SNCC just go in front of the arbitrator and prove what you just said is an absolute fact, that this was an aggravation of a prior injury and we have nothing to do with it? There's two reasons. They settled, so they gave up that argument. There's two reasons they really couldn't do that, and that's kind of a false argument that TIG makes. One, because if they went to trial or to hearing after TIG was out on the 91 claim, one, it leaves future medical open. At no time was anybody alleging that this was... I read that argument in your brief. All that argument is that it was risky. All you're saying is that, well, it was risky for SNCC to go to the arbitrator because it leaves future medical open, but we don't have any liability anyway, so let's go to bat. But you decided not to take the risk. More importantly, if we went to trial, the arbitrator couldn't assess, he couldn't make a determination that it was a continuing injury. He couldn't because the 91 claim was closed. So you no longer have the consolidated injuries, so SNCC can't make the argument in a 98 claim that stands on its own because the 91 is gone and not consolidated anymore that this relates back because the arbitrator can't make the determination that it's open. You're making an argument. You said to me earlier that the commission is uniquely qualified to make this determination as to whether or not the injury was 91 or 98, but now you're saying that because they settled, we couldn't go in and tell the arbitrator that. Correct. We can't argue something that was closed. Fine. Couldn't you go to the chancellery division then? Couldn't you have gone to the chancellery division after the settlement of the 91 case and say, we want a declaratory judgment that says that this is not our responsibility? The chancellery case retried the facts. It was already closed by what TIG did. The chancellery court would not reopen the evidence to be able to look at that and they would need that factual determination to be able to do that. Isn't it a separate issue before the chancellery court as to whether this injury is from 1998 or from 1991? No, it's completely reliant on the factual issues of is it an aggravation or are they two separate injuries, why aren't we looking at the policies? That's really what this is about. We're supposed to determine whether or not safety under its policy had an obligation and a duty to defend the 1998 action. Safety National never... Doesn't the term occurrence include this very situation whether it's an aggravation of an existing injury or not? Doesn't occurrence include that? Yes. Safety National never denied its obligation with IRMA although it defended under a reservation of rights. The issue is whether Safety National then paid the debts of someone else, TIG, because of the actions of TIG. So didn't you have to go into court? Isn't there a duty under your policy to go into that chancellery division and get that declaratory judgment? Otherwise, you're out of the box. Again, going back to the argument I made before, we couldn't do it. We had no notice that this was going to happen up until the minute it was happening. No, you had noticed as soon as you were informed by IRMA that he had an injury in 1998. Correct. You became aware of this immediately by TIG until the second was happening. Where is your obligation once IRMA tenders it to you? Our obligation was to inform them of whether we were going to defend, which we did, and reserved our rights under that. Yes, but you can't sit on the sidelines. You have to go in and get the declaratory. No, you have to, at some point, have that decided, which you've never done. But we would need facts to show SNCC something different than what IRMA was saying all along. IRMA continued on the path of we believe that this is a continuing injury. We are going to have the trier of fact determined. IRMA said really the contrary to what you're suggesting. I mean, in March of 2000, IRMA told TIG both files will be resolved simultaneously. They both involve the same condition. A year before, in September of 1999, IRMA told TIG permanency is open on the 91 claim. Back in the fall of 1998, right after the 98 claim was filed, IRMA demanded that TIG not settle the 91 claim because, hey, we just got notice of the second claim. Is Ms. Glaza the person working for IRMA? Martha Glaza. Yes. Ms. Glaza, here's her note of 20 March. As I have previously advised you, the claimant re-injured himself on 8-4-98 and all medical charges since that date have been paid on the new claim file for which you are not responsible. And she's telling this to TIG. However, there may have been legal bills or expense payments made on the file periodically as both files ultimately are for the same condition and at some future point will be resolved simultaneously. Right. And that's the difference. There's two claims and the issue of injury is very separate from the claim. Martha Glaza testified that she's talking about you're not responsible for a 98 injury. But you could be responsible for everything if that 98 injury essentially disappears and is considered an aggravation or exacerbation of the 91. And that's why she says this will be resolved simultaneously at the time of hearing. And they keep doing that throughout the years. Up until 2006, IRMA never changed its desire to have this resolved by the trier of fact and didn't know until the last minute that TIG was going to settle this out from under them. They had every right to change their policy to settle their... I mean SNCC would have to have some kind of information that we weren't going along this path towards hearing where the trier of fact would make this factual determination that they could then base a chancery action upon. They would just be filing something that would be stayed continually as in Skilling and Hastings Mutual. Why would it be stayed? In the case of Hastings Mutual, which is a pretty recent case, that's what they did. They said we cannot make these chancery decisions until the underlying facts that are relevant to the coverage decision are made by... Are these in your reply brief? That's a new issue that you brought up. Are you citing some authority that you haven't referred to in your brief? Skilling and Hastings are different and just go to Justice Palmer's question. Let me ask you one other question. When you settled the case, did you do it on pinks? Yes. Both were done on pinks. And on your pinks, did you reserve a contribution? I don't recall if SNC's or if the 98 one did because SNCC wasn't a party but I don't recall. But when you settled it, you settled all claims up to that point. On the 98? Yeah. Right. Okay. And I believe the 91 did as well. And it went before the commission for an approval? Correct. Okay. All right. I believe TIG is arguing here that IRMA got what it bargained for and can't complain later but IRMA didn't bargain for TIG not to cover a continuing claim. That 91 claim, if it continued on, IRMA would have had a reasonable expectation that TIG would cover that and that could only be determined if someone made a factual finding that the 98 claim was not a new injury but a continuing injury. And while we agree that the TIG policy absolutely covered 91 injuries that were claims made and the SNCC policy covered the 98 injuries, if the arbitrator made that determination, which is all that IRMA, its member municipality and SNCC thought was going to happen based on all of the representations made up through 2006 and continuing into those settlement discussions between the parties, the TIG policy would have been responsible for all benefits if that was made that way as if a separate 1998 claim never existed. But your claim is almost like a hypothetical though. It's like, well, you know, if some fact finder would have made a finding that this all goes back to 91, then we got cheated. But you never gave a fact finder a chance to do that. You never went to the chancellor's division. You never went to the arbitrator. You just pulled it. I mean, SNCC was put in a very difficult position because it had to close out future medical for IRMA. This isn't SNCC trying to save a dollar on its own. It's IRMA that's going to be paying this money to Everest University. No, you're just evaluating a risk and you decided not to take a risk. I mean, TIG decided not to let that happen because they knew what was going to happen. It's really not a hypothetical when you have TIG saying it's an all or nothing and I don't like our chances at nothing. We're going to go and settle this around without SNCC. I'm talking about the second settlement. Right. I mean, we had no choice. There's absolutely no way for the arbitrator to have made any liability finding on a claim that was gone and deconsolidated from the 98 claim. We could not have presented any argument to the arbitrator that the 98 claim All you had to do was go into Chan Street. That's all you had to do. But we couldn't have known that we needed to do that any earlier than we did. All you knew in 2000. Even if we hadn't noticed you just walk in the door and you ask the court to make a declaration. I mean, even if we filed the Chan Street action in 1998 it would have been stayed and if TIG acted the same way we would have been in the same place. Once they settled in 91 once they settled the 91 case you could have then asked the Chan Street court to declare. To re-open. No, to declare that no factual basis to make a decision. Well, then you have a trial. That's your state case. You know, every case starts out with no factual basis but then when you go to trial then you have a factual basis. I mean, that Chan Street court would have been very hard-pressed to make any different decision regardless of when we filed the declaratory judgment because TIG didn't let us go to trial  when you go to trial we have no factual determination of relatedness. Then you go in front of the Chan Street judge and you have a trial. I don't understand what this concept does not. At this point, that's all we can do with a search court. That's what the circuit companies do all the time. They go in for a declaratory. When we file it shouldn't really make a difference. The fact that there's no factual basis in front of the Chan Street court, it doesn't have any meaning to me. You file a dec action, let's say it does get state. TIG settles out from under you. You get notice of the fact that they settled. You go to the Chan Street division and you say, hey, they settled and now we've got a tender against us and we only have a policy that goes to 98. So we want a declaration from you, Chancellor, that we're not on the hook for this. And the Chan Street judge says, well, what's your evidence? Let's have a trial. And then you have a trial and then you're done. But instead you settled. I mean, Irma, in consultation with SNCC, settled because of the fact that they knew they could not be. You're Irma. You're standing in front of us right now. You're Irma. So Irma settled. Instead of going to trial in the Chancellor Division and saying, tell us we have no liability because this is not under our policy, you settled. So why are you here? Because they never could have gotten a result from the arbitrator dealing with the 91 that would have given them any ammunition whatsoever and then they would have had open medicals that would have resulted in even more damages. Well, I guess, you know, there are some things that you could have done like, you know, it would be kind of unorthodox, but, you know, you could have brought a 19B1 petition. And if you brought a 19B1 petition, then the arbitrator would have decided who paid what. Right. I mean, once the workers' compensation attorney for the 98 claim found out about the settlement, he attempted to object, but there's nothing you can really do. I mean, this kind of problem has existed as long as time. You know, I had it many, many times, and you know, when you can't get the other side to agree, I guess the only thing you could do is file a 19B1 and get it decided. But no one filed a 19B1 here. And really, by the time that was at issue, it was too late. It really was too late because all the parties other than TIG were under the assumption that they were moving towards hearing. Well, if you had filed the declaratory judgment action asking for this relief, then... It wouldn't have stayed anything at the commission. Well, see, that's the thing. Are you saying that you couldn't have asked for this determination because they could have settled anyway? No. We couldn't have asked for the determination by the Chancery Court because under skilling, the Workers Compensation Commission has to make the factual determination because our coverage action, regardless of when it was filed, would have been reliant on a determination of continuing injury, new injury. Two claims, one claim. And so, the Chancery Court couldn't have made that decision until something was done in the underlying case. And that never happened because of what TIG did. But why couldn't you have done something in the underlying case? SNCC tried. We engaged in when Irma demanded that the parties work it out amongst themselves, and that's in the evidence, that they engaged in shared work. After all of the settlements happened, there was nothing filed while the parties were negotiating that. Why couldn't you do anything in the meantime to, you know... SNCC never believed that this would occur, essentially. They took TIG at their word that they were negotiating in the settlement discussions in good faith. Anything that you want to add? I just reserve the  to say that the circuit court was right in granting summary judgment to TIG and dismissing a safety nationals complaint. TIG fulfilled every single obligation it had under its policy of insurance with Irma. It defended and indemnified Irma against John Orso's 1991 claim without any reservation of rights. It had the unconditional right, as you pointed out, to settle and defend the claims without the consent of the insured. It settled the 91 case within policy limits and it obtained... Well, if there's this injury that's ongoing, okay, beginning when he first has his foot injury and it continues for 10 years, is there an obligation of TIG to indemnify under the workers' compensation policy portion of that contract? Your Honor, this policy, as you pointed out, only applies to occurrences in 1991 and from 1991 through the time Mr. Orso filed his workers' compensation claim for the 91 injury and when he filed a separate claim alleging a separate accident for the 1998 injury and thereon until about mid-2000, Irma, as you pointed out, wrote to us more than once and said, we are viewing these, as Mr. Orso did, as two entirely separate claims and he did describe two entirely separate accidents and as the circuit court found, we know from Irma's representations that they were two separate claims. I would like to point out Is there a question of fact, though, that this incident that occurred in 1998 was part of that original injury? If there was this question of fact, then I submit, Your Honor, as the circuit court found, this should have been, and could have been, tried to the Workers' Compensation Commission, which Safety National is saying they're the ultimate authority on these type of causation injuries with respect to workers' complaints. The record shows that every single defense attorney who handled Mr. Orso's claim for Irma or either one of its insurance companies were ready to go to trial. They could have tried the case. They could have, they originally thought they were going to have a joint defense. Yeah, but the reason that they didn't try the case is because if they would have tried the case, you know, they could have been responsible for the medical and the TTD forever. And that's, you know, they were between the rock and the hard place. That's what this is all about. Well, I guess what it's all about is speculating that the workers' compensation arbitrator couldn't possibly and wouldn't possibly have considered the evidence that if Safety National wanted to prove and thought the medical evidence could prove that all of Mr. Orso's medical difficulties were stemming from the 91 injury, if they thought they had enough evidence to prove that and go to trial, why are we saying, oh, the workers' compensation arbitrator would never listen to that. They would never give us a fair shake on that. Even Irma's executive director said we could have tried that case and if they had been able to persuade the arbitrator that this was all because of the 91 injury, then there would have been a credit for the amounts paid by Irma on the 91 claim. So, you know, as you pointed out why isn't this settlement basically, why doesn't it include anything that happened subsequent? Doesn't the terminology of it basically include anything? So why isn't the 98, whatever it is, you know, why isn't that subsumed in the settlement that TIG entered into? Well, TIG settled the 91 claim and again Mr. Orso filed two separate claims. The arbitrator affirmed the settlement agreement that gave Irma and the village a complete release from 91 liability. There was no reason why this matter couldn't be tried again if there was this settlement agreement. And Mr. Orso's difficulties were from the 91. What was the safety from going to the arbitrators and litigating this issue? That's what I'm saying. Their attorneys were ready to. Mr. Powers, then both attorneys who represented Irma after the two insurance companies took over, all of those attorneys, their testimony is in the record, said we can try this case. In fact, at all times they thought maybe we can prove that Mr. Orso's difficulties are not related to either accident. He apparently had some psychological difficulties. But at some point safety decided not to do that, not to have any of that involved. And that was their prerogative. And Irma is saying, you know what, they clearly labeled this, even to their own financial detriment to the get-go, they decided we've got two separate claims we're going to pay, two separate SIRs, they're sophisticated people, they're basically a commercial insurance company, and they opened two claims. Right. And isn't it a fact that because Irma submitted the claim, the 1998 injury, to its insurer that that's then this safety has only the rights that Irma would    Well, that is true. There's a side issue, and it's fully addressed in the brief. And Irma's claim is that the insurance company believed that under the TIG policy, no assignments were valid, were enforceable against TIG, and also no settlement. The settlement here, you had to get TIG's permission for this. Irma apparently settled, Safety National withdrew its reservation of rights in exchange for this assignment, which our policy says is not valid against us. But yes, that's their claim that they take from Irma. And the case law clearly holds that this type of provision that forbids the assignment is perfectly valid. That's right. As is the clause that says we can settle any claim without permission. Well, they don't really cite any authority to suggest that you didn't have the right to that. That the court can't look at it, but of course the court can affirm the circuit court's judgment on any reason apparent of record, and certainly that insurance clause is in the record, and this was raised in the trial court, this argument. Do your honors have any further questions? No. No? Okay. Thank you, your honors. We would ask that this court affirm the judgment of the circuit court. Just to further emphasize the issue of the breach of the doctrine of good faith and the duties that TIG owed, TIG in its response brief had pointed to city court versus Rucker, and I think that is... How could Irma assign this to the circuit court? Under what theory, case law, anything, how could Irma assign the claim to safety? I mean, we really believe that the issue of the assignment is not before the court because there was no cross-appeal filed, but putting that aside, which is covered in the record. Correct. We can affirm on any basis in the record. Now, you need to address the provision of the insurance policy of TIG that forbids any assignment to you of this claim. We believe because of the breach that was committed by TIG that they waived their rights to assert those defenses. And you're arguing this for the first time, right? No, we put that in our reply brief, that they had waived their rights under the estoppel doctrine to assert those policy defenses because of the fact that they committed a breach under that policy in their obligations to Irma. And again, under city court versus Rucker. Isn't that like a circular argument? If they have to prohibit an assignment where they're acting in bad faith towards their insurer. They can't enforce this agreement to their own benefit when they're acting in detriment to their own insurer. But Irma never took that position that you're taking. Irma continuously let safety and TIG know that this was being considered a separate claim. And that's the difference. They had to acknowledge they were separate claims because the claims are what's filed at the commission. Of course, they were separate claims because one was filed in 91 and one was filed in 98. But Irma never changed its position that they could be one injury. But they didn't act with a proper motive. There was no proper motive in what they did leading up to that settlement.   position with respect to SNCC or TIG. When the policy provisions allow the insurer to enforce a separate claim, the TIG does allow not only for them to settle without consulting the insurer and also allows for the non-assigned I don't know how you come to this question. TIG cannot say we're going to completely disregard our obligations to cover an injury if that is the case. We're going to cut ourselves off from any liability that is a real possibility in the 98th claim and then say you can't assign your rights to someone else. Did you ever raise a question of material fact that these were the same injuries? Yes. We point in the record to doctor's and point to  specific page of the record. It was in May of 2000 when the treating doctor opined that the 91 injury is responsible for the current condition more so than the 98 injury. Which from 2000 then to 2006, TIG did nothing on its own to raise that issue or take over the defense. There were still years before TIG took over the defense and it allowed IRMA to continue on knowing that that doctor's opinion was in the record and that's how the case was progressing, that it was going to be one injury that was continuous and  it was       continuous and that it was going to be one injury that was continuous and that it was going to be one    were injuries that deafened the deaf of another. I mean we really believe that under city court versus record it requires TIG to disclose and reasonably and with a proper motive that would not be inconsistent with the reasonable ex- eps. The motives we believe of TIG were blatantly improper as demonstrated by all of the evidence that we pointed to in our briefs in the months leading up to that July 2006 settlement such that they are estopped from asserting their policy of defense. We did. You know they made a statement in their brief that basically what happened here is that you guys took a hardball position and were unreasonable during the attempts to make a global settlement and since they couldn't get you to settle in a reasonable fashion, they went ahead and took care of themselves. And now you took the fall because you guys were playing hardball and that happens all the time. Right. I mean, the testimony is in the record as to the two sides, the insurance companies, as to what took place in those settlement discussions. What's the testimony for your side? What supports you? We believe that the correspondence and the testimony of the TIG people before those settlement negotiations took place saying we want to share in this, we want to globally settle this and share. They were participating in the settlement negotiations saying that they had more than a 10% responsibility or no responsibility for anything past 1998. It showed that they were on the same page as SNCC. Wasn't there testimony in the record though about meetings with the lawyers for both sides and an agreement for an actual settlement and then safety said no, we're not going to do it that way. Didn't that happen twice? It was disputed as to the actual dollar amounts of what SNCC was asking. So it wasn't disputed that safety kept backing off just as far as the amount. That's what you're saying was the dispute over. No, there was a separate testimony between those adjusters. Well, once the 98 accident happened, your client paid TTD, didn't they? Yes. And they didn't ask for any contribution on the TTD, did they? They wouldn't because of the nature of the reimbursement policies. Because they were two separate claims, it would again have to be a credit or something made as a determination by the arbitrator. If they were continuing claims and it had gone to trial, then Irma would have looked at it and said, okay, we don't pay two SIRs, we're going to ask for reimbursement of the second SIR under which all that TTD was paid from the initial policy. I mean, they looked at it as a separate injury or an aggravation of a pre-existing injury right off the bat, did they? They looked at it as two separate claims and they didn't know until probably 2000 when they got the doctor's report specifically that it was going to be one continuous injury. Well, is there any question in the record that there was a separate claim? No. Is there any question in the record that you have a claims made policy for 1998? That's the distinction. Even though it's a claims made policy, there's no argument that can be made that basically wouldn't be held liable for a continuous injury. The claim in the policy, the terminology of a claims made is different than the claims that he submitted? No. If those two claims were adjudicated to be two different injuries, they flow to the same claim. It's technically a separate claim if that claim goes away and it's just a continuing injury. But there was nothing that prohibited you in this law action from asking for that? For asking? A declaratory within your nothing. Procedurally and technically there was nothing preventing us from filing it, but it wouldn't have changed the outcome in any way. Yeah, but one of the problems was at the beginning, Power and Cronin were representing both sides. So until your firm got into the case, there was no realization as to the fact that it could have been one injury and not an aggravation. I mean, I think Mr. Power has said that there was no fight. While Powers and Cronin was handling the consolidated matters, there was no dispute that it was going to go one way or the other. It was all moving towards resolution and putting on all the facts at trial. Thank you. We would like to close the meeting at this time. Thank you.